MARIA C., A Minor, by and through her Parent and Natural Guardian, Iris Nereida CAMACHO; Iris Nereida Camacho, Appellants in 04–2630

v.

SCHOOL DISTRICT OF PHILADELPHIA, Appellant in 04–2756.

Nos. 04–2630, 04–2756.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a): May 23, 2005.

Decided July 29, 2005.

David Sambolin, Luis P. Diaz, Philadelphia, PA, for Appellants.

C. Reginald Johnson, School District of Philadelphia, Office of General Counsel, Philadelphia, PA, for Appellant.

Before SCIRICA, Chief Judge, ALITO and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Plaintiff, Maria C., by and through her mother, seeks attorneys' fees and costs pursuant to the fee-shifting provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(B) (2000).[1] In 1996, Maria C.'s mother initiated administrative proceedings under the IDEA against defendant, the School District of Philadelphia (the "School District"). Between 1996 and 2002, the parties developed Maria C.'s Individualized Education Plan ("IEP"). The administrative action was closed in 2002, after the parties reached a final, voluntary agreement on the IEP. Subsequently, plaintiff filed a fee petition in the U.S. District Court for the Eastern District of Pennsylvania, asserting that she was the prevailing party in the administrative proceedings that occurred between 1996 and 2002.[2]

The district court held that plaintiff prevailed in the proceedings that occurred in 2000 and 2002 only, and accordingly entered an order awarding her $24,484.16. Shortly thereafter, plaintiff moved for additional attorneys' fees relating to the fee petition litigation in the district court. The district court issued a supplemental memorandum holding that plaintiff is entitled to $2,500 for attorneys' fees relating to the fee petition litigation, but stayed the order pending this appeal.

For reasons explained below, we vacate the district court's order awarding plaintiff attorneys' fees and costs for the 2002 administrative proceedings, but affirm the district court's orders in all other respects. Because we write primarily for the parties, their counsel, and the district court, we set forth only the salient facts and procedural history.

## I.

In 1996, Maria C. was diagnosed with dyslexia, a learning disability, and a vision impairment. Pursuant to the IDEA, the School District created an IEP for Maria C., and she was enrolled in a special education program. (App. 141–42) However, her parents observed that she made little progress with this program, and pursuant to the IDEA, requested that the School District conduct an impartial due process hearing to be presided over by a Pennsylvania Special Education Hearing Officer. David Sambolin, Esq. ("Sambolin"), represented them at this hearing, and in the subsequent proceedings and meetings with School District officials and representatives that occurred over the next seven years.

Between 1996 and 1999, Maria C.'s parents repeatedly sought to revise and enforce her IEP through due process hearings and IEP meetings with School District officials and representatives. These hearings and meetings led to voluntary agreements between the parties on Maria C.'s IEP. (Supp.App. 11–17; App. 146–48; 158–59) In December 1999,

1. Effective July 1, 2005, this statute was amended by the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108–446, tit. I, § 101, 118 Stat. 2647, 2715–31 (2004). The amendment has no bearing on Maria C.'s case.

2. Maria C.'s mother, Iris Nereida Camacho, is also a named plaintiff in this action, and asserts the same claim to attorneys' fees and costs as Maria C. However, for ease of discussion, this opinion refers to the claim of Maria C. only.

another due process hearing was convened after Maria C.'s parents alleged that the School District was failing to adhere to her IEP. (App. 148) Before the hearing began, the parties reached an agreement on Maria C.'s IEP. (Supp.App. 19–24) The hearing officer, therefore, did not issue an order.

In June 2000, Sambolin filed a complaint with the Pennsylvania Department of Education, alleging that the School District had failed to enforce the agreement on Maria C.'s IEP reached in December 1999. After investigating the matter, the Department's Bureau of Special Education agreed, and directed the School District to adhere to the agreement, to evaluate Maria C.'s progress under her IEP, and to revise the IEP as necessary. (App. 79–83) At the Bureau of Special Education's direction, another IEP meeting was held in October 2000, and the parties reached an agreement on Maria C.'s IEP. (App. 82)

In November 2001, after the IEP developed at the October 2000 meeting had expired, another IEP meeting was held. (App. 150, 160) Dissatisfied with the educational services Maria C. was receiving, her parents convened four due process hearings between January and June 2002. (App. 151, 160–62) Finally, at a June 2002 hearing, the parties engaged in extensive negotiations and reached a final agreement on Maria C.'s IEP. Sambolin, however, insisted that the administrative action was "not ending by agreement" but with a "consent decree." (Supp.App. 40; 37–41) The hearing officer agreed that the parties entered a "consent decree," and the parties recited the terms of their agreement for the record. Two days later, the hearing officer reported back to the parties that, "we entered a Consent Decree on the record in this matter. Therefore," he concluded, "I relinquish all jurisdiction in this matter. By copy of this letter I am notify-

ing the Office for Dispute Resolution that this matter is closed." (Supp.App. 42)

Plaintiff then filed a fee petition in the district court, pursuant to 20 U.S.C. § 1415(i)(3)(B), arguing that she is the prevailing party. In her initial application, she requested $64,005.63 for Sambolin's services relating to the administrative proceedings and the fee petition litigation. (App. 138) For the services of Luis P. Diaz, Esq. ("Diaz"), a second attorney who worked exclusively on her fee petition, plaintiff initially requested $22,786.90. (App.177). The district court held that plaintiff was the prevailing party in the 2000 proceedings initiated by her complaint to the Bureau of Special Education, and in the 2002 proceedings which resulted in a final IEP. Accordingly, the court entered an order, dated May 5, 2004, awarding plaintiff $24,484.16.

Subsequently, plaintiff filed a motion in the district court for fees for Diaz's services in connection with the fee litigation, this time in the increased amount of $30,111.90. (App. 246) In a supplemental memorandum, the district court held that plaintiff was entitled to an additional $2,500 for attorneys' fees relating to the fee petition litigation. The court entered an order, dated June 24, 2004, to this effect, but has held the order in abeyance pending the outcome of this appeal.

On appeal, plaintiff seeks attorneys' fees and costs for all of the administrative proceedings in this matter, as well as the full amount of attorneys' fees and costs sought in connection with this fee litigation. The School District concedes that plaintiff is entitled to attorneys' fees and costs for the 2000 administrative proceedings, in the amount of $3,859.65. However, the School District contends that plaintiff was not the prevailing party in any of the other administrative proceedings, because these proceedings resulted in voluntary agreements

relating to her IEP. The School District thus argues that the district court erred in awarding Maria C. attorneys' fees and costs in connection with the 2002 administrative proceedings. The School District also argues that the district court erred in awarding Maria C. $2,500 for attorneys' fees and costs in connection with the fee litigation.

## II.

We review the district court's award of attorneys' fees for an abuse of discretion, but exercise plenary review over the court's application of legal standards. *John T. ex rel. Paul T. v. Delaware County Intermediate Unit*, 318 F.3d 545, 551–52 (3d Cir.2003).

## III.

The IDEA provides that: "In any action or proceeding brought under [20 U.S.C. § 1415], the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B).

### A. Prevailing Party Analysis

For fee-shifting purposes, prevailing party status does not arise unless there is a "material alteration of the legal relationship of the parties." *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (quoting *Texas State Teachers Assn. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). Thus, in *Buckhannon*, the Supreme Court rejected the so-called "catalyst theory," which posited "that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 601, 121 S.Ct. 1835.

The Court explained that the "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* at 605, 121 S.Ct. 1835. The Court also clarified that a material alteration of the parties' legal relationship can come about through a judgment on the merits or a court-ordered consent decree. *Id.* at 604, 121 S.Ct. 1835.

This Court has applied *Buckhannon* to the prevailing party requirement of the IDEA's fee-shifting provision. *See John T.*, 318 F.3d at 555–58. In *John T.*, we acknowledged "that a *stipulated settlement* could confer prevailing party status under certain circumstances." *Id.* at 558 (citing *Truesdell v. Philadelphia Hous. Auth.*, 290 F.3d 159, 165 (3d Cir.2002) (fee-shifting under 42 U.S.C. § 1988), and noting its holding that a settlement agreement enforced through a consent decree conferred prevailing party status where it: (1) contained mandatory language; (2) was entitled "Order"; (3) bore the judge's signature; and (4) was judicially enforceable). However, we held that obtaining a satisfactory IEP through settlement negotiations and a voluntary agreement with the local educational agency did not accord the child's parents prevailing party status. *Id.* at 560 (explaining that the voluntary agreement did not satisfy *Buckhannon*'s judicial sanction requirement).

■ With the exception of the proceedings occurring in 2000, initiated by Maria C.'s complaint to the Bureau of Special Education, plaintiff was not the prevailing party in this administrative action. The revisions to her IEP stemming from the other proceedings between 1996 and 2002 were brought about by the parties' negotiations and voluntary agreements. *See John T.*, 318 F.3d at 560. The administra-

tive action was settled in 2002 by a voluntary agreement between the parties. It is of no moment that Sambolin and the hearing officer described the parties' final settlement agreement as a "consent decree." There was, in fact, no consent decree. The hearing officer never entered an order and explicitly relinquished jurisdiction over the matter.[3] (SA 42)

Therefore, Maria C. is not entitled to attorneys' fees and costs under the IDEA, except for those fees and costs incurred in relation to the 2000 proceedings, as the School District concedes, which total $3,859.65.

Accordingly, we vacate the district court's order awarding Maria C. attorneys' fees and costs for the 2002 administrative proceedings.

## B. Fees Incurred in Connection with the Fee Petition Litigation

■ Maria C. seeks $41,773.25 in attorneys' fees for Sambolin's and Diaz's work in connection with the fee petition litigation.[4] (App. 164, 234, 246) Plaintiff complains that, by awarding her merely $2,500 for fees relating to the fee petition litigation, the district court inappropriately discounted the time and efforts of Sambolin and Diaz. The School District argues that plaintiff is not entitled to any fees or costs in connection with this litigation.[5]

Fee-shifting under the IDEA is discretionary. See 20 U.S.C. § 1415(i)(3)(B) ("the court, in its discretion, may award reasonable attorneys' fees . . .") It is firmly settled that "the time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award." Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524, 537 (3d Cir.1997) (quoting Prandini v. Nat'l Tea Co., 585 F.2d 47, 53 (3d Cir.1978) and citing Public Interest Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1190 (3d Cir.1995)) (internal

---

3. Compare A.R. ex rel. R.V. v. New York City Dep't of Educ., 407 F.3d 65, 76 (2d Cir.2005) (holding that an administrative order entered and signed by an independent hearing officer ("IHO") in IDEA proceedings, which sets forth or incorporates the terms of the parties' agreements, confers prevailing party status on the parents; reasoning that, "[a]lthough not 'judicial,' such an order changes the legal relationship between the parties: Its terms are enforceable, if not by the IHO itself, then by a court, including through an action under 42 U.S.C. § 1983.") (citations omitted).

4. Of this figure, $30,111.90 relates to Diaz's services, and the remaining $11,661.35 relates to Sambolin's work on the fee petition litigation. (App.164)

5. The School District contends that Diaz represented Sambolin, not plaintiff, and therefore plaintiff is not entitled to a fee award for Diaz's services. Diaz's Notice of Appearance in this action states: "I Luis P. Diaz, Esq., hereby enter my appearance in the above captioned case, having been retained by David Sambolin to represent him in this mat-

ter." (Supp.App.45) (emphasis added) Plaintiff argues that this was a misstatement that "in no way changed the legal relationship between" her and Diaz. (Reply at 35–36). In support of plaintiff's contention, Diaz appended his affidavit, dated March 17, 2005, to plaintiff's reply. (Reply at 49–50) The School District argues that this Court may not consider Diaz's affidavit because it is not part of the record on this appeal. We agree that this affidavit is not properly before us, and thus we do not take it into consideration. See Fed. R.App. P. 10(a).

Although the district court agreed with the School District that plaintiff apparently "overlooked" the rule that a claim for fees is "the claim of the plaintiff, not the attorneys," it nevertheless entertained plaintiff's petition with respect to Diaz's services. (App. 13) The district court apparently decided that Diaz actually functioned as plaintiff's attorney, despite his statement to the contrary. We conclude that this finding has a basis in the record, and therefore uphold the award to plaintiff of $2,500 as within the court's discretion.

quotation marks omitted). However, the award for preparing and litigating the fee petition must be based on "time [that] was *reasonably necessary* to obtaining a reasonable fee award." *Prandini,* 585 F.2d at 54 (emphasis added).

The district court found that "a great deal of" the services provided by both Sambolin and Diaz in the fee litigation were unnecessary, redundant, and excessive. The court also found that, had plaintiff proffered support for her original fee request before filing this action, as the School District had requested, or even shortly after filing this action, all of Diaz's efforts would have been unnecessary. The court determined that Diaz could have "reasonably" spent 10 hours in connection with the fee petition litigation, and applying Diaz's claimed rate of $250 per hour, awarded plaintiff $2,500 for attorneys' fees. We conclude that this award was not an abuse of discretion.

Plaintiff argues that Diaz's services were essential to this litigation, because he culled data on Sambolin's time and expenses from 1997 to 2002 and performed prevailing party research and analysis. However, plaintiff also seeks compensation for nearly 40 hours of Sambolin's time on these same undertakings. (App. 163–64) Further, plaintiff offers no explanation for why she failed to proffer supporting documentation for her fee request in a timely manner, why Diaz's services were retained more than one year after she initiated this litigation, or why it was necessary for both Sambolin and Diaz to work on the fee petition. Moreover, plaintiff's underlying fee petition is largely unsuccessful. *See, e.g., Institutionalized Juveniles v. Sec'y of Public Welfare,* 758 F.2d 897 (3d Cir.1985) (holding that attorneys' fees for litigating fee petition are subject to the lodestar method, and may be reduced based on the results obtained).

For these reasons, we affirm the district court's order awarding plaintiff $2,500 for attorneys' fees in connection with the fee petition litigation.

## IV.

In conclusion, although we empathize with plaintiff's claim with respect to Sambolin's fees, considering the time and effort he dedicated to the administrative proceedings, we are constrained to vacate the district court's order awarding plaintiff attorneys' fees and costs for the 2002 administrative proceedings. We affirm, however, the award of $3,859.65 for attorneys' fees and costs relating to the 2000 administrative proceedings. We also affirm the denial of plaintiff's petition for attorneys' fees and costs relating to the other administrative proceedings. Lastly, we affirm the district court's order awarding Maria C. $2,500 for the fee petition litigation.